**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 11, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

MELINDA ECKARD,

    Plaintiff - Appellant,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

    Defendant - Appellee.

No. 21-1258

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:20-CV-00274-DDD-SKC)**

_____

Submitted on the briefs:*

Ronald L. Wilcox of Wilcox Law Firm, LLC, Denver, Colorado, for Plaintiff-Appellant.

Karen H. Wheeler, Jami A. Maul, Nicholas J. Deaver, and Sean T. Carlson of Wheeler Law, P.C, Greenwood Village, Colorado, for Defendant-Appellee.

_____

Before **HOLMES**, **KELLY**, and **CARSON**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

---

    * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

_____

This diversity case arises out of a claim for underinsured motorist (UIM) benefits by Plaintiff-Appellant Melinda Eckard (insured) against her insurer, Defendant-Appellee State Farm Mutual Automobile Insurance Company (State Farm).  On summary judgment, the district court held that Ms. Eckard's suit was time barred by Colorado Revised Statutes § 13-80-107.5(1)(b).  Exercising our jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings.

## Background

On March 12, 2016, Ms. Eckard and Jonathan Grzelak were involved in an automobile accident.  Aplt. App. 20–23.  Mr. Grzelak's policy with Permanent General Assurance Corporation (Permanent) had a personal injury liability coverage limit of $25,000 per person.  This was insufficient to cover Ms. Eckard's injuries and damages, which were $300,000 and counting.  Aplt. App. 30–31.  Ms. Eckard's State Farm policy had UIM coverage for $250,000 and required State Farm's written consent to settle with an underinsured motorist.  Aplt. App. 30–31.  The policy provided, "There is no coverage for any **insured** who, without our written consent, settles with any **person** or organization who may be liable for the **bodily injury** or **property damage**."  Aplt. App. 71.

On October 11, 2017, Ms. Eckard's attorney received settlement documents and a check for policy limits from Permanent.  Aplt. App. 54, 57.  On November 1, State Farm faxed to Ms. Eckard's lawyer permission to settle.  Aplt. App. 55–56.

2

Then, on November 7, Ms. Eckard and her husband signed the settlement agreement and endorsed the check. Aplt. App. 56.

Ms. Eckard filed suit on October 29, 2019, claiming breach of contract by State Farm for failure to pay UIM benefits in connection with the accident. Aplt. App. 27. State Farm moved for summary judgment on limitations grounds. Aplt. App. 7–8. The applicable statute bars UIM claims brought more than "two years after the insured received payment of the settlement." Colo. Rev. Stat. § 13-80-107.5(1)(b). Concluding that Ms. Eckard had "received payment of the settlement" on October 11 when her lawyer received the check and finding no genuine issues of material fact, the district court granted summary judgment to State Farm. Aplt. App. 94–100. On appeal, Ms. Eckard argues that the district court erred in disregarding contrary authority from the Colorado Court of Appeals and in its construction of the statute.

## Discussion

We review summary judgment decisions de novo, viewing the facts in the light most favorable to the nonmovant and drawing all reasonable inferences in her favor. Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). State Farm argues that October 11, 2017, was when Ms. Eckard "received payment of the settlement" because that was the day her lawyer received Permanent's settlement agreement and check. Aplee. Br. at 18. Ms. Eckard contends that the operative day

3

was November 7, 2017, when she and her husband executed the settlement agreement and check. Aplt. Br. at 13–15. Because Ms. Eckard filed this suit on October 29, 2019, the date when Ms. Eckard "received payment of the settlement" determines whether § 13-80-107.5(1)(b) bars her claim.

Sitting in diversity, this court must follow the Erie doctrine and apply Colorado's interpretation of "received payment of the settlement" in § 13-80-107.5(1)(b). See Sinclair Wyo. Refining Co. v. A&B Builders, Ltd., 989 F.3d 747, 765–66 (10th Cir. 2021). Without definition from the state legislature, we look to the highest state court's understanding. Id. at 766. Because the Colorado Supreme Court has not interpreted this provision, we must predict how that court would interpret it. Id. State appellate court decisions may guide us in this process, Reeves v. Enter. Prod. Partners, 17 F.4th 1008, 1012 (10th Cir. 2021), especially where they bind all lower state courts, Gooding v. Wilson, 405 U.S. 518, 525 n.3 (1972), as is the case here, Colo. R. App. P. 35(e). These decisions do not bind us, but we look to them unless we are "convinced by other persuasive data that the highest court of the state would decide otherwise." Stickley v. State Farm Mut. Auto. Ins., 505 F.3d 1070, 1077 (10th Cir. 2007) (quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940)).

The Colorado Court of Appeals has interpreted § 13-80-107.5(1)(b) in two cases: Stoesz v. State Farm Mutual Automobile Insurance Co., 410 P.3d 583 (Colo. App. 2015), and Kovac v. Farmers Insurance Exchange, 401 P.3d 112 (Colo. App. 2017), cert. denied, 2017 WL 3593981 (Colo. Aug. 21, 2017) (en banc). In Stoesz,

4

the Colorado Court of Appeals addressed the fact that § 13-80-107.5(1)(b) includes the word "payment" twice. 410 P.3d at 585–86. First, "payment of either the liability claim settlement or judgment within the time limit specified" is one way that an insured person can preserve a UIM claim stemming from underlying bodily injury beyond the general "three years after the cause of action accrues." Colo. Rev. Stat. § 13-80-107.5(1)(b). Second, the statute explains that the window for preserved claims is "within two years after the insured received payment of the settlement or judgment on the underlying bodily injury liability claim." Id. Stoesz focused on the first use of "payment" in the statute, which is not the provision at issue here. 410 P.3d at 585–88. But the Stoesz court made an important observation relevant to this case: that the Colorado legislature "is presumed to have intended a difference between the[se different uses of the word payment]." Id. at 587.

Two years after Stoesz, the Colorado Court of Appeals in Kovac considered the meaning of "received payment of the settlement." 401 P.3d at 114–17. That case involved a UIM claim by Ms. Kovac against Farmers Insurance Exchange (Farmers). Id. at 113–14. As here, the parties disputed the date that constituted "received payment of the settlement" and thus triggered the limitations period. Id. Ms. Kovac (like Ms. Eckard here) argued that she "received payment of the settlement" when she executed the settlement papers and endorsed the check, while Farmers (like State Farm here) argued that it was the day Ms. Kovac's lawyer received settlement papers and a check from the UIM's insurance company. Id. The Kovac court decided the operative time was when Ms. Kovac accepted the settlement agreement, which it

directly equated to "received payment of the settlement." Id. at 115.  The court

explained that because Ms. Kovac was not legally entitled to any money until she

accepted the settlement agreement, "[t]he date on which Kovac 'received payment'

was thus the date that she accepted the settlement agreement . . . and was legally

entitled to the funds." Id.[1]

Finding Kovac's reading persuasive and lacking any evidence convincing us

that the Colorado Supreme Court would have a different understanding of the phrase

"received payment of the settlement" in § 13-80-107.5(1)(b), we apply Kovac's

interpretation.  Therefore, Ms. Eckard "received payment of the settlement" when she

accepted the settlement agreement and endorsed the check on November 7, 2017.

See id.

But State Farm still argues that Kovac is distinguishable, contending that

"there is no evidence that [Permanent] made the acceptance of the check conditional

on the signing of the release or that the signing of the release was the explicitly

authorized method of acceptance of the agreement." Aplee. Br. at 9–13.  At this

stage, the evidence certainly suggests that the only authorized method of acceptance

of the agreement was signing the release.  Aplt. App. 81 (explaining that the Release

---

[1] The Kovac court followed a federal case that interpreted § 13-80-107.5(1)(b) in the same way.  See Westby v. State Farm Mut. Auto. Ins. Co., No. 15-CV-00076, 2016 WL 471357 (D. Colo. Feb. 8, 2016).  The Kovac court found persuasive the federal court's observation that "[i]t is a matter of common sense that the insured cannot receive settlement funds until after the parties have completed the settlement because up until . . . the agreement is finalized, the insured is not legally entitled to any money." 401 P.3d at 115 (quoting Westby, 2016 WL 471357, at *6).

is "for and in consideration of the sum of Twenty Five Thousand Dollars

($25,000.00)").[2]  Further, if the parties dispute methods of acceptance of the

settlement, that is a genuine dispute of material fact that would make summary

judgment inappropriate.[3]

State Farm also submits that Ms. Eckard's situation is distinguishable from

Ms. Kovac's because "the terms of [Ms. Kovac's] offer *explicitly stated* she could

have the money only if she accepted the offer."  Aplee. Br. at 11.  State Farm

suggests that this is a material difference, but that argument must fail because it rests

upon a misunderstanding of Colorado contract law.  In Colorado, settlement

---

[2] State Farm's argument that "the check Ms. Eckard 'received' [on October 11] was 'payment' of the underlying liability settlement," Aplt. Br. at 6–7, would mean that Ms. Eckard had settled with Permanent without State Farm's permission, which would — conveniently for State Farm — mean that she had voided her UM/UIM coverage with State Farm.  Aplt. App. 71.  It makes no sense that a third party could void Ms. Eckard's coverage with State Farm by sending her a check that she did not endorse or cash.

[3] The same conclusion, that summary judgment is inappropriate, applies to the dispute below over the date that Ms. Eckard executed the check.  See Aplt. App. 37–38 (the check).  Compare Aplt. App. 9, 39–40, 85 (State Farm's contention that Ms. Eckard executed the check on October 11 and her testimony thereto), with Aplt. App. 54, 56, 64–689 (Ms. Eckard's contention that she executed the check on November 7 and evidence thereto).  State Farm does not directly address this in its brief before this court.  On the one hand, this silence suggests State Farm has abandoned its argument that the check was executed on October 11.  State Farm still suggests that other methods of accepting the settlement agreement were possible, Aplee. Br. at 9–13, but without arguing that the check was executed on October 11 as acceptance, it does not offer any method of acceptance actually taken by Ms. Eckard other than the November 7 execution of the settlement agreement.  Even if State Farm preserved the argument that the check was executed on October 11, because Ms. Eckard has met her burden in responding with evidence it was not, this would merely create a genuine dispute of material fact that would defeat summary judgment.  Talley v. Time, Inc., 923 F.3d 878, 893–94 (10th Cir. 2019).

agreements are contracts that must be formed, construed, and enforced like other contracts. Kovac, 401 P.3d at 116 (citing Yaekle v. Andrews, 195 P.3d 1101, 1111 (Colo. 2008)); *cf.* Restatement (Second) of Contracts § 30(2) (Am. L. Inst. 1981) ("Unless otherwise indicated by the language or the circumstances, an offer invites acceptance in any manner and by any medium reasonable in the circumstances."). Here, the record does not include any reasonable medium of acceptance other than the execution of the settlement agreement.[4] In fact, the only reasonable medium of acceptance would be executing the settlement agreement by its terms "for and in consideration of the sum of Twenty Five Thousand Dollars ($25,000.00)," clearly referring to the check for that amount sent with the settlement papers.

## Conclusion

The district court granted summary judgment to State Farm because it incorrectly found as a matter of law that Ms. Eckard "received payment of the settlement" when her lawyer received the settlement agreement and check on October 11, 2019. As we have explained, Ms. Eckard actually "received payment of the settlement" when she executed the settlement agreement and authorized the check on November 7, 2019. As a result, § 13-80-107.5(1)(b) does not bar Ms. Eckard's UIM claim against State Farm.

---

[4] This is considering that State Farm has abandoned its argument that the check was executed on October 11 as acceptance of the settlement agreement. Again, even if it preserved or raised this argument, it would only defeat summary judgment by creating a genuine dispute of material fact concerning the date that the check was executed.

REVERSED and REMANDED for further proceedings.